UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

TRANSIT RAIL, LLC,

                  Plaintiff,

        -vs-                                   05-CV-0564(C)

JOHN MARSALA, JOEL MARCUS,
RONALD W. BRIDGES, ANDREA COSGROVE,
DARRYL S. CAPLAN, ESQ., TODD SAGE,
STACEY SAGE a/k/a STACIE SAGE,
MARY SAGE, JOHN TAYLOR,
SHERB AND CO., LLP,
FELDMAN SHERB & CO., P.C., and
WESTMINSTER SECURITIES CORPORATION,

                  Defendants.

_____

APPEARANCES:   DUKE, HOLZMAN, YAEGER & PHOTIADIS LLP (GREGORY  P. PHOTIADIS, ESQ., and  CHARLES C. RITTER, JR., of Counsel), Buffalo, New York, for Plaintiff.

                     MAGAVERN, MAGAVERN & GRIMM (CHERYL SMITH FISHER, ESQ., of Counsel), Buffalo, New York, for Defendant John Marsala.

                     HODGSON RUSS LLP (ROBERT J. FLUSKEY, ESQ., of Counsel), Buffalo, New York, for Defendant Andrea Cosgrove.

                     THE LAX LAW FIRM (BARRY R. LAX, ESQ., of Counsel), New York, New York, for Defendant Westminster Securities Corporation.

        Plaintiff Transit Rail, LLC ("Transit Rail") brings this civil action seeking compensatory and punitive damages for securities fraud in violation of the Securities Exchange Act of 1934 (the "1934 Act"), based on defendants' alleged conduct relating to plaintiff's purchase of securities of New York Regional Rail Corp. ("NYRR") during the years 2004-05.  Now pending for decision are motions filed by defendants John Marsala

(Item 94) and Westminster Securities Corp. (Item 102), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint for failure to state a claim upon which relief can be granted.[1]

Oral argument of these motions was heard by the court on June 12, 2007.  The court's ruling follows.

## BACKGROUND

The complaint in this action was filed on August 9, 2005, and was amended on January 30, 2006, upon consent of the parties (*see* Item 85).  The original complaint was 36 pages long, with 193 numbered paragraphs and 7 causes of action.  The amended complaint (Item 96) also sets forth 7 causes of action, but is 59 pages long, with 317 numbered paragraphs.  What follows next is the court's best effort to summarize the factual allegations in the amended complaint as they relate to the issues raised by the pending motions.

NYRR is a publicly traded company which operates a freight transportation business from its corporate offices in West Seneca, New York.  During the pertinent time period, most of NYRR's operations were conducted through its subsidiaries, JS Transportation, Inc. and GM Trucking and Associates, Inc.

---

[1]Defendants Feldman Sherb & Co., P.C., and Sherb & Co., LLP, along with individual defendant Andrea Cosgrove, also filed motions to dismiss (*see* Items 91, 107, 167), and individual defendants Joel Marcus, Todd Sage, Stacey Sage, Mary Sage, and John Taylor–all proceeding in this action *pro se*–filed notices indicating their reliance on the matters set forth in the other defendants' motions (*see* Items 127 & 131).  The court was advised by plaintiff's counsel at oral argument that all claims in this action have been resolved except the claims against defendants Marsala and Westminster.

Plaintiff claims that it was solicited in September 2003 by Ronald Bridges,[2] one of NYRR's corporate directors, to purchase NYRR stock as a means of raising capital sufficient to cover the company's outstanding liabilities and debts, which would allow it "to grow, prosper, and be profitable" (Amended Complaint, Item 96, ¶ 44).  Bridges introduced plaintiff to defendant John Marsala, identified in the amended complaint as NYRR's controlling stockholder.  Plaintiff alleges that Marsala and Bridges provided plaintiff with a consolidated financial statement for NYRR as of June 2003, and made other representations about the company's corporate structure, operations, and financial condition, which ultimately induced plaintiff to acquire a controlling interest in NYRR. According to the amended complaint, the June 2003 financial statement indicated that NYRR had total liabilities of $2,568,183.00 (*id.* at ¶¶ 32, 181), but plaintiff later discovered that the actual liabilities exceeded $7,000,000.00 (*id.* at ¶ 182).  In the meantime, on February 4, 2004, plaintiff entered into an agreement with NYRR (the "Investment Agreement"), and with Marsala and NYRR (the "Tri-Party Agreement;" together, the "Purchase Agreements"), for the purchase of 2,500 shares of newly issued Series D Preferred stock at a price of $2,500,000.00, and 2,083,333 shares of common stock at a price of approximately $250,000.00, which took place in a series of transactions between February 2004 and January 2005  (*id.* at ¶¶ 55-60).

Plaintiff alleges that in making its decision to purchase the NYRR stock, it also relied on the "Form 10-K" financial disclosure documents filed with the Securities and Exchange

---

[2]Mr. Bridges was named as a defendant in both the original and amended complaints, but was voluntarily dismissed from the action–along with defendant Darryl Caplan–pursuant to Fed. R. Civ. P. 41(a) by Notice of Dismissal dated March 15, 2007 (Item 180).

Commission (referred to by plaintiff as the "10-K filings"), reporting the company's financial health for the years 2001, 2002, and 2003.  These filings disclosed a working capital deficiency and recurring operating losses, but plaintiff claims it was assured by Bridges and Marsala that the capital infusion from the stock purchases would resolve NYRR's existing liabilities, opening the door for "significant opportunities for growth and profitability" (Item 96, ¶ 43).  According to the amended complaint, Marsala and Bridges participated in the preparation of the 10-K filings and other publicly filed documents reporting NYRR's financial status, along with the following named defendants:  Darryl Caplan, identified as a director, officer and/or legal counsel for NYRR and its subsidiaries; Joel Marcus, identified as NYRR's chief financial officer ("CFO"); Andrea Cosgrove, identified as NYRR's bookkeeper and "inside accountant" (*id.* at ¶ 27); Stacey Sage, identified as an employee of JS Transportation, Inc. (alleged to be a subsidiary of NYRR) and/or GM Trucking and Associates, Inc. (alleged to be a subsidiary of NYRR and/or JS Transportation); and Feldman Sherb & Co. (referred to in the amended complaint as "FS") and Sherb & Co. (referred to in the amended complaint as "Sherb"), identified as the auditors of the 10-K filings and financial reports relied upon by plaintiff (*see id.* at ¶¶ 46-48).

Plaintiff also claims that Marsala did not disclose that he had previously been convicted in the United States District Court for the District of New Jersey upon a plea of guilty to charges of conspiracy to commit securities fraud in violation of 18 U.S.C. § 371, which resulted in an order issued by the Securities and Exchange Commission on September 30, 1998 barring Marsala from associating with any securities broker, dealer, or investment adviser, or from participating in an offering of penny stock, for a period of five years (referred to in the amended complaint as the "Bar Order") (*id.* at ¶¶ 86-88).

-4-

According to the amended complaint, Marsala was "associated" with defendant Westminster, a securities broker-dealer within the meaning of the 1934 Act, which employed Marsala as its information technology ("IT") manager.  Plaintiff claims that Westminster provided Marsala with office space and computer access which he used to solicit purchases of NYRR stock, in violation of the Bar Order.  Plaintiff also alleges that Marsala prepared and submitted a "Form 211" application on behalf of Westminster, which resulted in approval of Westminster as a "market maker" allowing NYRR shares to be listed for trading on the Over-the-Counter Bulletin Board ("OTCBB")[3] (*see id.* at ¶¶ 103-13). According to plaintiff, this market for NYRR securities was "fueled" by the false and misleading information supplied by Marsala in the 10-K filings and other public documents, as well by "material omissions" in the Form 211 application process–such as Marsala's failure to disclose not only the existence of the Bar Order, but also his involvement in the "sham" acquisition of the OSK Capital I Corp. (whose primary shareholders were the principals of Westminster and their family members) which plaintiff claims was carried out to merely to inflate the assets on NYRR's balance sheet (*see id.* at ¶¶ 95-102).  Finally, plaintiff alleges that in August 2004, plaintiff was present at Westminster's offices in New York City and met with Westminster's President, John O'Shea, who supported and

---

[3]The OTCBB website provides the following "Overview:"

The OTC Bulletin Board® (OTCBB) is a regulated quotation service that displays real-time quotes, last-sale prices, and volume information in over-the-counter (OTC) equity securities.  An OTC equity security generally is any equity that is not listed or traded on NASDAQ or a national securities exchange.  OTCBB securities include national, regional, and foreign equity issues, warrants, units, American Depositary Receipts (ADRs), and Direct Participation Programs (DPPs).

http://www.otcbb.com/aboutOTCBB/overview.stm#abouthistory

endorsed Marsala and encouraged plaintiff to continue with the acquisition of NYRR stock. (*id.* at ¶ 185).[4]

Based on these allegations, plaintiff sets forth four causes of action for securities fraud under the 1934 Act, and two causes of action for common law fraud.  Specifically, in its First Cause of Action against all defendants, plaintiff alleges that the statements in the public filings made or caused to be made by defendants, upon which plaintiff relied in purchasing the NYRR securities, were known by defendants to be materially false and misleading, resulting in violations of Section 18 of the 1934 Act (*id.* at ¶¶ 261-71).

In its Second Cause of Action, plaintiff alleges that the individual defendants and Westminster violated Section 10(b) of the 1934 Act, and corresponding Rule 10b-5 promulgated by the Securities and Exchange Commission ("SEC"), by employing schemes to defraud, making false statements or omissions of material facts, and engaging in fraudulent business practices in connection with plaintiff's purchases of NYRR securities (*id.* at ¶¶ 272-82).

In its Third Cause of Action, plaintiff alleges that defendants Marsala, Marcus, Bridges, Caplan, and Todd Sage were "controlling persons" of NYRR within the meaning of Section 20(a) of the 1934 Act, and are therefore jointly and severally liable for the

---

[4]With respect to the remaining individual defendants, plaintiff alleges that Todd Sage was an officer and/or director of JS Transportation and GM Trucking, and that Stacey Sage, Mary Sage and John Taylor were employed by JS Transportation and GM Trucking.  Plaintiff claims that Todd Sage engaged in several "related party transactions" which were not disclosed in any of the public filings relied upon by plaintiff, including self-dealing and diversion of funds through secret accounts, resulting in unauthorized payments to (among others) Mary Sage, Stacey Sage, and John Taylor, and causing material detriment to NYRR's operations (*see, e.g.*, Item 96, ¶¶ 124-60).  As noted, the claims against these defendants have been resolved.

damages which plaintiff suffered in connection with its purchases of NYRR securities (*id.* at ¶¶ 283-87).

In its Fourth Cause of Action, plaintiff alleges that FS and Sherb, the auditors, violated Section 10(b) and Rule 10b-5 by employing schemes to defraud, making false statements or omissions of material facts, and engaging in fraudulent business practices in connection with plaintiff's purchases of NYRR securities (*id.* at ¶¶ 288-94).

In its Fifth Cause of Action, plaintiff alleges that Westminster was a controlling person with respect to defendant Marsala within the meaning of Section 20(a), and is therefore jointly and severally liable for the damages which plaintiff suffered in connection with its purchases of NYRR securities (*id.* at ¶¶ 295-301).

In its Sixth Cause of Action, plaintiff alleges that Marsala deliberately and fraudulently misrepresented the status, condition, and viability of the business of NYRR, and that plaintiff relied upon those misrepresentations to its detriment (*id.* at ¶¶ 302-08).

In its Seventh Cause of Action, plaintiff alleges that all of the defendants "conspired, aided, abetted, and assisted one another to carry out the fraudulent scheme and cause injury to plaintiff" (*id.* at ¶¶ 309-17).

Plaintiff seeks compensatory damages of $3,000,000.00, and $6,000,000.00 in punitive damages, based on these seven causes of action.

As mentioned above, defendants Marsala and Westminster have moved to dismiss the fraud claims made against them.  Following a discussion of the legal standards to be considered in ruling on the matters raised in the briefs and at oral argument, the court will address each motion in turn.

**DISCUSSION**

**I.    Legal Standards**

**A.    Motion to Dismiss**

As with any complaint, when deciding a motion to dismiss a securities fraud claim, the court must accept the plaintiff's factual allegations as true and must draw all inferences in the plaintiff's favor. *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 161 (2d Cir. 2000); *see also Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Dismissal is proper only if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, ___U.S.___, 127 S.Ct. 1955, 1974 (2007); *see also Iqbal v. Hasty*, ___F.3d___, 2007 WL 1717803, at *9-11 (2d Cir. June 14, 2007) (discussing *Bell Atlantic*'s "explicit disavowal" of the oft-quoted statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), "that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.").

The purpose of a motion to dismiss is "to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). The court's inquiry "is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.*, 727 F. Supp. 784, 786 (D.Conn. 1990), *quoted in In re Xerox Corp. Erisa Litigation*, ___F. Supp. 2d___, 2007 WL 1137373, at *2 (D.Conn. April 17, 2007).

-8-

In making this inquiry, the court may consider the facts stated on the face of the complaint, as well as in documents appended to the complaint or incorporated in the complaint by reference, and matters of which judicial notice may be taken.  *See Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999).   This includes, in securities fraud actions, "public disclosure documents required by law to be filed, and actually filed, with the SEC . . . ."  *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991); *Rushing v. Nexpress Solutions, Inc.*, 2006 WL 2640645, at *3 (W.D.N.Y. September 14, 2006).

## B.     Securities Fraud

While the rules of pleading in federal court generally require only "a short and plain statement" of the plaintiff's claim for relief, Fed. R. Civ. P. 8, allegations of fraud must be "stated with particularity."  Fed. R. Civ. P. 9(b).  In the context of a civil action for securities fraud, this particularity requirement has been expanded by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, which provides in relevant part:

> In any private action arising under this chapter in which the plaintiff alleges that the defendant–
>
> > (A) made an untrue statement of a material fact; or
> >
> > (B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;
>
> the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed. . . .

> In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u-4(b)(1), (2).[5]

Cases within the Second Circuit have devised a common standard for evaluating a civil securities fraud complaint's compliance with the PSLRA's pleading requirements. Under this standard, the complaint must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent. *See Stevelman v. Alias Research Inc.*, 174 F.3d 79, 84 (2d Cir. 1999), *see also In re Marsh & McLennan Companies, Inc. Securities Litigation*, 2006 WL 2057194, at *8 (S.D.N.Y. July 20, 2006).

As set forth above, plaintiff alleges that the various defendants engaged in conduct which resulted in violations of three separate provisions of the Securities Exchange Act of 1934:  (1) Section 10(b) and corresponding Rule 10b-5, (2) Section 18, and (3) Section 20(a).  The case law has established specific pleading requirements for each of these violations, now discussed in turn.

---

[5]The PSLRA further provides that, "[i]n any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party."  15 U.S.C. § 78u-4(b)(3)(B).

### 1.    Section 10(b) and Rule 10b-5

The primary statutory proscription against securities fraud is set forth in Section

10(b) of the 1934 Act, which provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange - -
> . . .
>
> To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b).   In addition, Rule 10b-5, entitled "Employment of manipulative or

deceptive device,"  provides:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
>
> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

17 C.F.R. § 240.10b-5.   Taken together, these provisions proscribe conduct "involving

manipulation or deception, manipulation being practices . . . that are intended to mislead

investors by artificially affecting market activity, and deception being misrepresentation, or

nondisclosure intended to deceive."  *Field v. Trump*, 850 F.2d 938, 946-47 (2d Cir. 1988)

(internal quotation marks and citation omitted).

As a general matter, to state a claim under § 10(b) and Rule 10b-5, the plaintiff must allege that the defendant, in connection with the purchase or sale of securities, (1) made a materially false statement or omitted a material fact, (2) with scienter, and (3) that the plaintiff's reliance on the defendant's action caused injury to the plaintiff. *See Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 161 (2d Cir. 2000) (citing cases).  The first element, materiality, is satisfied at the pleading stage where the plaintiff alleges "a statement or omission that a reasonable investor would have considered significant in making investment decisions." *Id.* (citing *Basic Inc. v. Levinson*, 485 U.S. 224, 231 (1988), and *Glazer v. Formica Corp.*, 964 F.2d 149, 154-55 (2d Cir. 1992)).

The element of "scienter," which in the securities fraud context means "an intent to deceive, manipulate, or defraud," *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n.12 (1976), was the focus of the Supreme Court's recent decision in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, ___U.S.___, 127 S. Ct. 2499 (2007).   The Court noted that Congress, in the PSLRA, imposed the requirement upon private securities fraud plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2), but left the key term "strong inference" undefined.  *Telllabs*, 127 S. Ct. at 2504.  To resolve a divergence among the Courts of Appeals in construing the term, the Court set out "to prescribe a workable construction of the 'strong inference' standard, a reading geared to the PSLRA's twin goals:  to curb frivolous, lawyer-driven litigation, while preserving investors' ability to recover on meritorious claims." *Id.*, 127 S. Ct. at 2509.  The Court held:

> The strength of an inference cannot be decided in a vacuum.  The inquiry is inherently comparative:  How likely is it that one conclusion, as compared to

others, follows from the underlying facts?  To determine whether the plaintiff has alleged facts that give rise to the requisite "strong inference" of scienter, a court must consider plausible nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff.  The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the "smoking-gun" genre, or even the "most plausible of competing inferences."  Recall in this regard that [the PSLRA]'s pleading requirements are but one constraint among many . . . installed to screen out frivolous suits, while allowing meritorious actions to move forward.  Yet the inference of scienter must be more than merely "reasonable" or "permissible" – it must be cogent and compelling, thus strong in light of other explanations.  A complaint will survive, we hold, only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged.

*Id.*, 127 S. Ct. at 2510 (citations and footnote omitted).

The third element of a securities fraud claim, reliance, "serves as the causal connection between the defendant's action and the plaintiff's loss."  *In re Enron Corp. Securities*, 2006 WL 4381143, at *24 (S.D.Tex. June 5, 2006) (citing *Basic, Inc. v. Levinson*, 485 U.S. 224, 243 (1988) ("Reliance provides the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury.")); *see also Finkel v. Docutel/Olivetti Corp.*, 817 F.2d 356, 359 (5th Cir. 1987) ("Proof of reliance establishes that the damaged party was induced to act by the defendant's conduct; it defines the causal link between defendant's conduct and the plaintiff's decision to buy or sell securities. . . .  It is the generally applied bond between bad conduct and damages."), *cert. denied*, 485 U.S. 959 (1988).

Alternative theories have developed in the case law for establishing the reliance element, depending upon whether the allegations of fraud fall within subsection (a), (b), or (c) of Rule 10b-5.  *See, e.g., In re Enron Corp. Securities*, 2006 WL 4381143, at *24-25 (discussing cases).  Notably, the Supreme Court has held that in § 10(b) cases based

-13-

primarily on material omissions, reliance on the omitted information may be presumed where the information is "material in the sense that a reasonable investor might have considered them important" in making the investment decision. *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153-54 (1972). "This obligation to disclose and this withholding of a material fact establish the requisite element of causation in fact." *Id.* at 154 (citing *Chasins v. Smith, Barney & Co.*, 438 F.2d 1167, 1172 (2d Cir. 1970)); *see also Smith v. Ayres*, 845 F.2d 1360, 1363 (5th Cir. 1988) (rebuttable presumption of reliance "is a judicial creature. It responds to the reality that a person cannot rely upon what he is not told."), *cert. denied*, 508 U.S. 910 (1993).

Under any of these theories, however, it is generally accepted that at the pleading stage, the plaintiff must simply allege that it relied on the defendant's statements or omissions made in connection with the purchase or sale of securities, and that this reliance was the proximate cause of the injury suffered. *See, e.g., In re Parmalat Securities Litigation*, 376 F. Supp. 2d 472, 491-92 (S.D.N.Y. 2005).

### 2.     Section 18

Section 18 of the 1934 Act provides, in relevant part:

> Any person who shall make or cause to be made any statement in any application, report, or document filed pursuant to this chapter or any rule or regulation thereunder . . . which statement was at the time and in the light of the circumstances under which it was made false or misleading with respect to any material fact, shall be liable to any person (not knowing that such statement was false or misleading) who, in reliance upon such statement, shall have purchased or sold a security at a price which was affected by such statement, for damages caused by such reliance, unless the person sued shall prove that he acted in good faith and had no knowledge that such statement was false or misleading.

15 U.S.C. § 78r(a).  To state a claim under this section, the plaintiff must allege that (1) the

defendant made a false or misleading statement, (2) the statement was contained in a

document "filed" pursuant to the 1934 Act or any rule or regulation thereunder, (3) reliance

on the false statement, and (4) resulting loss to the plaintiff.  *See In re Stone & Webster,*

*Inc. Sec. Litig.*, 414 F.3d 187, 193 (1st Cir. 2005), *cited in In re Alstom SA*, 406 F. Supp.

2d 433, 478 (S.D.N.Y. 2005).[6]

While this pleading burden has been described as "significantly lighter" than that

faced by a plaintiff seeking to establish a Section 10(b) violation, *Ross*, 607 F.2d at 556,

Section 18 requires actual reliance on the information contained in the filed document.  *Id.*

at 552-53.  "Thus, to state a claim under Section 18, plaintiffs must allege that they actually

read and relied on the filed document.  Constructive reliance is not sufficient."  *In re*

*Alstom*, 406 F. Supp. 2d at 479.

### 3.     Section 20(a)

Plaintiff also asserts claims against Marsala and Westminster under Section 20(a),

which provides:

> Every person who, directly or indirectly, controls any person liable under any
> provision of [the 1934 Act] or of any rule or regulation thereunder shall also
> be liable jointly and severally with and to the same extent as such controlled
> person to any person whom such controlled person is liable, unless the
> controlling person acted in good faith and did not directly or indirectly induce
> the act or acts constituting the violation or cause of action.

---

[6]Although not explicitly stated, Section 18 has been found to cover materially false and misleading omissions as well.  *In re Alstom*, 406 F. Supp. 2d at 478 (citing *Ross v. A.H. Robins Co., Inc.*, 607 F.2d 545, 555-56 (2d Cir. 1979) (plaintiff seeking recovery under § 18 "must merely plead and prove that a document filed with the Commission contains a material misstatement or omission"); also citing *In re Caesars Palace Sec. Litig.*, 360 F. Supp. 366, 386 n.19 (S.D.N.Y. 1973) ("Clearly, the failure of a person to include material information in a necessary document can just as surely result in a false and misleading statement as would the inclusion of incorrect information.")).

15 U.S.C. § 78t(a).   In order to sufficiently plead "controlling person" liability under this provision, a plaintiff must allege (1) a primary violation of the Act by a controlled person, (2) control of the primary violator by the defendant, and (3) that the controlling person was a "culpable participant" in the primary violation.   *Boguslavsky v. Kaplan*, 159 F.3d 715, 720 (2d Cir. 1998); *see also Ganino*, 228 F.3d at 170; *In re Adelphia Communications Corp. Sec. & Derivative Litig.*, 398 F. Supp. 2d 244, 261 (S.D.N.Y. 2005).[7]   "Control over a primary violator may be established by showing that the defendant possessed 'the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise.'"   *S.E.C. v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1472-73 (2d Cir. 1996) (quoting 17 C.F.R. § 240.12b-2).

"Controlling person" liability under this section "is a separate inquiry from that of primary liability and provides an alternative basis of culpability."   *In re Scholastic Corp. Securities Litigation*, 252 F.3d 63, 77 (2d Cir. 2001).   Thus, while a defendant cannot ultimately be held liable as both a primary violator and a controlling person, such alternative theories of liability are permissible at the pleading stage.   *In re Adelphia Communications Corp. Sec. & Derivative Litig.*, 398 F. Supp. 2d 244, 261-62 (S.D.N.Y. 2005).

---

[7]Once a plaintiff makes a out a *prima facie* case of liability under Section 20(a), the burden shifts to the defendant to show that he or she acted in good faith and did not directly or indirectly induce the act or acts constituting the violation.  *See* 15 U.S.C. § 78t(a); *S.E.C. v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1473 (2d Cir. 1996).

### C.  Common Law Fraud

The Sixth Cause of Action against Marsala, and the Seventh Cause of Action against Marsala and Westminster, are based on common law fraud.  The pleading requirements for common law fraud under New York law, while essentially the same as those discussed above with respect to securities fraud claims under Section 10(b) and Rule 10b-5, *see Cyber Media Group, Inc. v. Island Mortgage Network, Inc.*, 183 F. Supp. 2d 559, 580 (E.D.N.Y. 2002), are subject to the particularity standards of Fed. R. Civ. P. 9(b), rather than the more exacting standards of the PSLRA.  *See, e.g., Marcus v. Frome*, 329 F. Supp. 2d 464, 475 (S.D.N.Y. 2004).  To state a claim for common law fraud in accordance with Rule 9(b), plaintiff must allege that defendants made "a representation of fact, which is either untrue and known to be untrue or recklessly made, and which is offered to deceive the other party and to induce them to act upon it, causing injury."  *Jo Ann Homes at Bellmore, Inc. v. Dworetz*, 25 N.Y.2d 112, 119 (1969), *quoted in Citibank, N.A. v. K-H Corp.*, 968 F.2d 1489, 1496 (2d Cir. 1992).

The court now turns its focus to the specific arguments raised by defendants Marsala and Westminster in support of their motions to dismiss the amended complaint.

### II.    Defendants' Motions to Dismiss

### A.    John Marsala

As outlined above, plaintiff identifies John Marsala as the IT manager for Westminster Securities and–prior to plaintiff's stock purchases–NYRR's controlling stockholder.  Plaintiff alleges conduct on the part of Marsala placing him in a central role in the circumstances surrounding the stock purchases, resulting in liability for securities

fraud under the First, Second, and Third Causes of Action, and common law fraud under the Sixth and Seventh Causes of Action.  Marsala essentially makes three arguments in support of his motion to dismiss these claims:  (1) plaintiff's securities fraud allegations are barred by the disclaimer and merger clauses of the Purchase Agreements; (2) plaintiff has failed to adequately allege "control person" liability; and (3) plaintiff has failed to adequately allege common law fraud.

### 1.    Disclaimer/Merger

Marsala's primary argument is that the disclaimer and merger clauses contained in the agreements under which the NYRR stock purchases were made preclude plaintiff from establishing justifiable reliance, a critical element of any securities fraud or common law fraud claim.   Specifically, the Investment Agreement provides as follows:

> No representations or warranties have been made to the Investor by the Company or any officer, employee, agent, Affiliate or Subsidiary of the Company, or by any party to the Transaction Documents, other than the representations of the Company contained herein, and the Investor is not relying upon any representations other than those contained herein.

(Item 119, Ex. B, ¶ 3(f)).

> This Agreement supersedes all other prior oral or written agreements between the Investor, the Company, their affiliates and persons acting on their behalf with respect to the matters discussed herein, and this Agreement and the instruments referenced herein (including Schedules and Exhibits and the other Transaction Documents) contain the entire understanding of the parties with respect to the matters covered herein and therein and, except as specifically set forth herein or therein, neither the Company nor the Investor makes any representation, warranty, covenant or undertaking with respect to such matters.  No provision of this Agreement may be amended other than by an instrument in writing signed by the Company and the Investor upon the written consent of all of the parties to the Transaction Documents, and no provision hereof may be waived other than by an instrument in writing signed by the party against whom enforcement is sought.

(*Id.* at ¶ 10(f)).  The Tri-Party Agreement similarly provides:

> No representations or warranties have been made to the Investor by Marsala, other than the representations of Marsala contained herein, and the Investor is not relying upon any representations other than those contained herein.

(Item 119, Ex. C, ¶ 3(f)).

> This Agreement supersedes all other prior oral or written agreements between Marsala, the Investor, the Company, their affiliates and persons acting on their behalf with respect to the matters discussed herein, and this Agreement and the instruments referenced herein (including the other Transaction Documents) contain the entire understanding of the parties with respect to the matters covered herein and therein and, except as specifically set forth herein or therein, no party makes any representation, warranty, covenant or undertaking with respect to such matters.  No provision of this Agreement may be amended other than by an instrument in writing signed by all of the parties hereto, and no provision hereof may be waived other than by an instrument in writing signed by the party against whom enforcement is sought.

(*Id.* at ¶ 7(f)).

Marsala relies heavily on the Second Circuit's decision in *Harsco Corp. v. Segui*, 91 F.3d 337 (2d Cir. 1996), in which the circuit court affirmed the district court's dismissal of a securities fraud claim on the pleadings.  After stating the general rule that reasonable reliance must be proved as an element of both a securities fraud claim and a common law fraud claim, the court in *Harsco* found that a specific disclaimer of reliance upon the representations contained in the agreement governing the securities purchase at issue precluded the plaintiff's claim that it was fraudulently induced to enter into the agreement "by the very representation it has disclaimed reliance upon."  *Id.* at 345.

Marsala's reliance on the *Harsco* case is somewhat misplaced.  The holding in *Harsco* was reached upon application of the rule established by the New York Court of

Appeals in *Danann Realty Corp. v. Harris*, 5 N.Y.2d 317 (1959), which requires a comparison of the disclaimer provisions in the contract with the allegedly fraudulent representations set forth in the complaint in order to determine whether "plaintiff has in the plainest language announced and stipulated that it is not relying on any representations as to the very matter as to which it now claims it was defrauded." *Danann*, 5 N.Y.2d at 320. As explained by the *Danann* court, a general disclaimer or merger clause "is ineffective to exclude parol evidence to show fraud in inducing the contract . . . ." *Id.* Rather, it is the specificity of the disclaimer which "destroys the allegations in plaintiff's complaint that the agreement was executed in reliance upon these contrary oral representations . . . ." *Id.* at 320-21.

This court's review of the pleadings in light of the contractual language set forth above suggests that Marsala should not be allowed to rely on the disclaimer and merger clauses of the purchase agreements to shield himself from liability for the representations he allegedly made in inducing plaintiff to purchase the NYRR stock. The representations alleged to have been made by Marsala upon which plaintiff claims reliance have to do with the overall corporate structure and financial status of NYRR (*see, e.g.*, Item 96, ¶¶ 29, 31-38, 45), none of which are specifically disclaimed in the purchase agreements. Rather, the contractual provisions at issue contain general disclaimer language prohibiting plaintiff from "relying upon any representations other than those contained herein" (*see, e.g.,* Item 119, Ex. B, ¶ 3(f)). In the court's view, this type of disclaimer is ineffective to preclude plaintiff's fraud claims against Marsala as a matter of law on the basis of the matters set forth in the pleadings and related documents pertinent to the pending motions. *Cf. Europadisk*

*Holdings, LLC. v. Shelton*, 2004 WL 613109, at *3 (S.D.N.Y. March 26, 2004) (integration clause of stock purchase agreement did not specifically disclaim reliance on defendant's representations as to company's financial status).

In addition, the amended complaint contains several allegations of securities fraud liability against Marsala based upon his alleged withholding of material information from plaintiff, or upon his alleged omission of material information from the public filings relied on by plaintiff in making its purchases of NYRR stock. As discussed above, there is authority for finding that allegations of this type raise a rebuttable presumption of reliance, taking the *Harsco* /*Danann* "justifiable reliance" analysis out of the picture–at least at the pleading stage. *See, e.g., Affiliated Ute*, 406 U.S. at 153-54; *In re Enron Corp. Securities*, 2006 WL 4381143, at *24-25.

Accordingly, defendant Marsala is not entitled to dismissal of the securities fraud claims on the basis of the disclaimer and merger provisions in the Purchase Agreements.

Marsala also contends that plaintiff's allegations pertaining to the failure to disclose his role at NYRR and Westminster, as well as the failure to disclose his prior securities fraud conviction, should be stricken from the amended complaint. According to Marsala, there is no obligation to disclose this type of information because it is not material to an informed investment decision.

The Second Circuit has repeatedly held that a securities fraud complaint should not be dismissed on the ground that the alleged misstatements or omissions are not material "unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance." *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985), *quoted in Ganino*, 228 F.3d at 162; *see also Azrielli v. Cohen Law*

*Offices*, 21 F.3d 512, 518 (2d Cir. 1994).   In this regard, plaintiff cites Item 401 of the federal securities regulations, 17 C.F.R. § 228.40, which requires disclosure in public filings of certain information about the involvement of directors, executive officers, promoters, control persons, and other "significant employees" in the affairs of the registrant's business. Accepting the allegations of the amended complaint as true, Marsala was at least a "control person" of NYRR, based on his substantial stock holdings as well as his exercise of authority in managing the company's affairs.

Accordingly, defendant Marsala is not entitled to dismissal of the complaint insofar as it alleges securities fraud or common law fraud liability based on his failure to disclose information about his role at NYRR and his prior securities fraud conviction.

### 2.     "Control Person" Liability

Marsala argues that since the allegations of a primary violation of the securities laws are insufficient, plaintiff's "control person" liability claim under Section 20(a) should be dismissed as well.  This argument is also rejected.  It is clear from the court's review of the amended complaint that plaintiff has adequately alleged a primary securities fraud claim against Marsala, as well as the remaining elements of a Section 20(a) claim–*i.e.*, control of NYRR by Marsala, and that Marsala was a "culpable participant" in the primary violation.

Specifically, plaintiff alleges that Marsala made materially false statements or omitted material facts about NYRR's corporate structure, operations, and financial condition with the intent to deceive, manipulate, or defraud plaintiff into purchasing NYRR stock; and that plaintiff's reliance on these statements caused injury.  With respect to the heightened requirement for pleading scienter, Marsala has made no attempt to advance

any plausible nonculpable explanation for his conduct, either in his motion papers or at oral argument, to provide a basis for the court to engage in the comparative inference inquiry outlined in *Tellabs*. Therefore, the court must conclude that a reasonable person would deem the inference of scienter on the part of Marsala at least as strong as any opposing inference to be drawn from the factual allegations in the amended complaint, considered collectively and accepted as true.  *See Tellabs*,127 S. Ct. at 2510.

Accordingly, Marsala is not entitled to dismissal of plaintiff's Section 20(a) claim.

### 3.      Common Law Fraud

Marsala also seeks dismissal of plaintiff's common law fraud claims for failure to plead with sufficient particularity.  However, as the discussion above amply demonstrates, the court's review of the pleadings reveals that plaintiff has sufficiently alleged representations of fact by Marsala (*see, e.g.*, Item 96, ¶¶ 29, 31-38, 45), which were either untrue and known to be untrue or recklessly made  (*id.* at ¶¶ 49; 305), and which were offered to deceive plaintiff and to induce the purchase of NYRR stock, causing injury  (*id.* at ¶¶ 306-08).  This is all that is required under the pleading standards for common law fraud outlined above.

For all of these reasons, defendant Marsala's motion to dismiss is denied.

### B.      Westminster

Plaintiff alleges liability on the part of Westminster, the securities broker which acted as market maker for the sale of NYRR stock, under the First (Section 18), Second (Section 10(b) and Rule 10b-5), Fifth (Section 20(a)) and Seventh (common law fraud) Causes of

Action.  Westminster moves to dismiss these claims, primarily arguing that plaintiff has failed to allege particularized facts as required to maintain a private securities fraud claim under any of the statutory provisions pleaded, or a claim for common law fraud.

In this regard, plaintiff alleges, *inter alia*, that Westminster omitted material information from its "Form 211" application to become a market maker for NYRR's common stock, including information about Marsala's violation of the Bar Order; Marsala's role at Westminster and his interest in NYRR; "sham" acquisitions of NYRR stock by Mr. O'Shea and other principals or employees of Westminster; and several other "adverse related party transactions."  Plaintiff claims that if this information had been disclosed, Westminster would not have been approved as NYRR's market maker, and NYRR would not have been provided a liquid market for trading its shares (*see* Item 96, ¶¶ 110-20).

Plaintiff also alleges that by virtue of its relationship with Marsala, who is a "person associated with a broker or dealer" as defined in the 1934 Act,[8] Westminster is responsible for the material misrepresentations and omissions made in the financial statements relied upon in the purchase of NYRR stock (*see id.*, ¶¶ 121-23).  In addition, plaintiff alleges that Mr. O'Shea  supported and endorsed Marsala and encouraged plaintiff to continue with its acquisition of NYRR stock while knowing that Marsala misrepresented NYRR's financial condition.

---

[8]The Act defines "associated person" as

> any partner, officer, director, or branch manager of such broker or dealer (or any person occupying a similar status or performing similar functions), any person directly or indirectly controlling, controlled by, or under common control with such broker or dealer, or any employee of such broker or dealer.

15 U.S.C. § 78c(a)(18).

Construed in a light favorable to plaintiff, these allegations at least marginally suffice to state, for the purpose of primary securities fraud or common law fraud liability, that Westminster should bear responsibility for the material misrepresentations and omissions upon which plaintiff relied in purchasing the NYRR stock.  Somewhat more troubling is the inquiry posed by *Tellabs* regarding whether these facts give rise to a strong inference that the defendant acted with the required state of mind:  *i.e.*, would a reasonable person deem the inference of scienter cogent and at least as compelling as any opposing inference to be drawn from the facts alleged?  *Tellabs*, 127 S. Ct. at 2510.

In this court's view, the most direct allegations of intent to deceive, manipulate, or defraud on the part of Westminster pertain to the meeting between Westminster's President John O'Shea and unnamed representatives of Transit Rail, at which O'Shea allegedly supported Marsala's efforts and encouraged plaintiff to continue with its stock purchases (*see* Item 96, ¶ 185), with knowledge of undisclosed circumstances that might have affected plaintiff's decision to invest in NYRR–such as sham transactions designed to artificially inflate NYRR's assets (*see id.* at ¶¶ 95-102), and the Bar Order (¶¶ 86-94). However, the meeting with O'Shea is alleged to have taken place in August 2004, six months after the purchase agreement was entered.  A reasonable person could strongly infer from these facts that O'Shea's recommendations had nothing to do with plaintiff's stock purchases prior to August 2004 or, perhaps just as strongly, that the recommendations were made with the belief that plaintiff's investment was vital to NYRR's continued financial viability.

In any event, even if plaintiff has failed the *Tellabs* test for assessing the strength of the inferences of scienter in determining the sufficiency of the primary securities fraud claim under Section 10(b)/Rule 10-b(5) and Section 18, this court's reading of the amended complaint suggests that plaintiff has pleaded "controlling person" liability under Section 20(a) which, as discussed above, provides an alternative for culpability under the 1934 Act. *See In re Scholastic Corp. Securities Litigation*, 252 F.3d at 77.   For example, plaintiff alleges that Westminister employed Marsala, and provided him with an office and computer access, which gave him the means and resources to become involved in NYRR stock transactions and engage in other activities at least arguably in violation of the Bar Order (*see, e.g.*, Item 96, ¶¶ 103-23).   These allegations, taken as true and construed in the light most favorable to plaintiff, are sufficient to establish for the purposes of Rule 12(b)(6) analysis that Westminster possessed the power to direct or cause the direction of Marsala's activities, and was a "culpable participant" in Marsala's primary securities fraud violation.

Based on this analysis, the court finds that plaintiff has met the requirements outlined above for pleading sufficient facts to subject Westminster to liability as a controlling person under Section 20(a), as well as liability for common law fraud. Accordingly, Westminster's motion to dismiss the amended complaint is denied.

## CONCLUSION

For the foregoing reasons, the motions to dismiss filed by defendants John Marsala (Item 94) and Westminster Securities Corp. (Item 102) are denied.  These parties shall file

pleadings in response to the amended complaint (Item 96) within twenty days from the date

of notice of this order, in accordance with the Federal Rules of Civil Procedure (*see* Rule

12(a)(4)(A).

So ordered.


_____
\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated:   July 20    , 2007
p:\pending\2005\05-564.june29.07